and we have Mr. Espland Jr. for the Appellant. Very honored, thank you. Alright, good morning and we have Mr. Parfenist for the Appellant. Good morning, your Honor. Good morning. Alright, Mr. Espland, you're up first. You have two minutes reserved for rebuttal. Go ahead. Thank you, your Honor. John Espland for the Appellant. The estate of Randall French. Your Honor, this case is a fairly straightforward qualified immunity analysis case. There was, below, there was quite a bit of discussion on the reasonableness, effective reasonableness argument. But here, for the purposes of the appeal, if we use the facts of the plaintiff's case in their entirety as the court must, there's no question here that there was a failure on the part of the appellee and the district court to recognize or identify a robust body of case law or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful. Mr. Espland, may I ask you to start with what are precisely the facts that we are assuming? It seemed to me that the facts taken in the light most favorable to the plaintiff here would essentially credit the testimony of Mr. Gross. Is that correct? That's correct, your Honor. And Mr. Gross testified that what he observed was that Sergeant French got out of his car at a time when the plaintiff's, the deceased's car was stopped, not in motion, at a distance of several feet from that car, was never pinned, never, and before the car went into, the deceased's car went into any motion, took a firing stance and without saying anything, shot Mr. Thevenin. Is that a fair recitation of Mr. Gross' testimony? That is a fair recitation of one of Mr. Gross' version of the facts, yes. Oh, I understand there are many, or at least two, and that he could be impeached. But again, we're assuming that the jury would credit the version of Mr. Gross' testimony that is most favorable to the plaintiff. We're assuming that for purposes of this appeal. Correct. So if that's so, can you explain to me how doing that, how any reasonable officer could think that that was lawful behavior? Sure, your Honor. So the fact that you just described details a scenario that unfolded at 3.30 in the morning, Mr. Gross was an observant witness of a part of the interaction. The piece that I think is instrumentally important here is the distance that Mr. Gross ascribes to the vehicle versus Sergeant French. And what we've learned from Mr. Gross' testimony is that he has that distance of somewhere between three, four, five feet. Okay. And he has that vehicle, Sergeant French, and then Sergeant French's vehicle behind Sergeant French. So we have a very confined pool space. So the plaintiff has put a lot of reliance into the case of Cowan and likes the overt analysis from this court. The problem is the O'Brien decision really undermines in its entirety the applicability of Cowan. Mr. Esquiman, if the car is not moving, all right, he says the car is not moving. How can there be qualified immunity to shoot someone multiple times if their car is not moving? Because the case… Let's just say this is the law. I think you'll agree. Cowan is not objectively reasonable for an officer to use deadly force to apprehend a fleeing motorist unless the officer has probable cause to believe, and this is the key part, that the suspect poses a significant threat of death or serious physical injury to the officer or others. And if the jury credits the version that he was completely stopped and multiple shots were fired, all the cases that you cite are all situations where there is some immediate threat being posed by a moving vehicle, you know, about to crash into someone. The key fact here is that the testimony would be that the car was stopped. Right. And so Officer French at that time has the ability and the right to be wrong in what his perception is. Give me a case where a car is stopped, completely stopped, and an officer fired multiple shots and they've gotten qualified immunity. We don't have a case, Your Honor, that says exactly those facts. I have not found a case where the car was stopped and the officer fired and was offered and entitled to qualified immunity. Mr. Asplund, I was influenced in reviewing this case by facts that occurred at a somewhat earlier time, which was that just before this aspect of the chase began, the decedent had used his car as a deadly weapon against the officer. When the officer had his torso inside the car through the driver's window, trying to stop, trying to turn off the key and disable the car, and the decedent drove the car off with the officer half in the car, which posed a huge danger to the officer's life. And he luckily escaped without any serious injury by falling out of the car. Does that have an influence on the officer's reasonable perception at the moment when he got out of his car and was standing like three feet in front of the decedent's car, whether it was moving at that moment or not? Thank you, Judge. I think it really does have a great impact on Sergeant French's decision-making process. So during that roadside stop for the DWI, it's in fact true that that occurrence that happened and then the pursuit followed. And I know that I'm sure Mr. Harfinis is going to describe the miles per hour of the pursuit as a slow pursuit. All of that builds to the understanding that Randy French has at the moment that he exits his vehicle. So he understands that there's been flight. He understands that there's been an attempt to injure him. He understands that Mr. Thevenin does not want to return to jail. He understands all these things. So when you have the vehicle, this is more akin to the case where the vehicle is backing out of the driveway. And yes, I understand that the person stole a police car, cruiser out of the driveway and was backing away when the officer fired. But even then, you don't have immediate threat when the vehicle is leaving you behind. And here we had a confined space. There were only so many places that Mr. Thevenin's car could go. And Officer French reasonably perceived that that vehicle was going to come at him. And there's no case law that says that you can't defend yourself. And there's plenty of case law that describes the fact that you don't need to wait for the threat to actually materialize before you engage in split-second decision-making. So Mr. Asplund, essentially, he could have shot him at any time. That's right. Is your argument. Is that right? That's not my argument, Judge. He could have shot him when he did shoot him. Which is he gets out of the car. He gets out of the car and executes the man. And he could reasonably think that that's okay because earlier the man had engaged in life-threatening conduct. So at any point, really, where there's going to be another confrontation, I guess it's not true at any time during the pursuit. But as soon as French confronts Thevenin while he's in the car, without asking him to get out, because Gross' testimony, contrary to that of several other witnesses, is that Sergeant French did not say anything. He can just reasonably think, whether he could or whether it is in fact legal, he could reasonably believe it was legal to kill the man. I think one of the facts of this case, as we develop them through Judge LaValle's recitation of the earlier events, I think that when he got out of the car, given the proximity of the vehicle to him, given his knowledge, that he's justified reasonably in taking the action that he took. It's not just his proximity to the vehicle. If he were standing alongside the driver to the left of the vehicle, that would be a totally different thing because the vehicle wouldn't represent a threat that in a tiny fraction of a second, his life could be gone. He was standing four feet in front of the vehicle after the driver had used the vehicle in reckless disregard of his safety by gunning it ahead while he was half in the vehicle. Then he found himself at the conclusion of this chase, right in front of the vehicle, where in a split second, in a tenth of a second, by putting his foot down, the driver could kill him. I think that's a part of the answer you should give to the question that Judge Lynch asked you. That's an entirely different thing from just saying, because that first thing happened at any moment, the officer would have been justified in shooting and killing him. That's not your argument. By the way, Mr. Esplin, what is the evidentiary basis at this point for the prior interaction? The record on the appeal is the testimony of Randall French, which is uncontested. Wait, it's the testimony of Randall French, but he's deceased now. Is that correct? He is deceased now, Your Honor, yes. Would a jury be, and of course, Mr. Thevenin was deceased from the start, and they are the only two people who witnessed that interaction. Is that correct? Correct. Is the jury obligated, assuming that the, did Sergeant French give a deposition in this case? Is that where the testimony comes from? He gave two, Your Honor. So he's been deposed, and Mr. Harfin is for some counsel for the plaintiff, had an opportunity to cross-examine that. He was called as a witness by the plaintiff, Your Honor. Okay, so that's going to come in. Is the jury obligated to accept that testimony? I don't know how the jury would reject that testimony. Well, the jury could find that Sergeant French lied about everything that happened at the time of the shooting, correct? There are people who contradict him. He claims that he had an injury, and there's medical evidence that at least a reasonable jury could construe as refuting that claim. So is that something that we are required to accept for these purposes if we are accepting the evidence in the light most favorable to the plaintiff that that even happened? I think you're right, Your Honor. There's no contrary evidence. The medical evidence, by the way, doesn't indicate that he wasn't injured. I misstated in my brief, and Mr. Harfin was kind enough to point it out, where I referred to it as a tibial fracture, and it was not a tibial fracture. It was a tibial spine injury, and that was a misstatement on my part that I corrected in my reply brief, and I've owned that correction. So there was an injury, and even the injury is not telltale of whether or not he was justified or whether or not his conduct was reasonable. No, of course not. Of course not. But to the extent that Sergeant French said that this injury occurred because he was pinned to his own car by Thevenin's car at the time that he decided to shoot, and there is an eyewitness who contradicts that, it seems to me that a reasonable jury, which would presumably be instructed that it could apply the falsus in uno maxim and discount his testimony entirely, would not be required to credit that the earlier incident even happened. Now, of course, at a trial, the plaintiff has all kinds of problems. The plaintiff would have to prove or persuade the jury not to credit the plaintiff's testimony. The plaintiff would have to persuade the jury to accept Gross's, I guess it's the deposition version, I forget which one it is, but the one that's most favorable to the plaintiff when he could be impeached with inconsistent statements at other times. There are all kinds of obstacles to this version of the facts becoming the one that the jury accepts. But for our purposes, don't we have to take the evidence in the light most favorable to the plaintiff? And that could include excluding all of French's account, wouldn't it? Yeah, except for the fact that it's the plaintiff's statement of material facts where I drew that information from. So this wasn't from anything other than the counterstatement of material facts. And I drew each and every one of those facts from their counterstatement of material facts that establishes that the DWI event occurred, that all of those things that you just described happened. You go back to Judge LaValle's point, you know, when we're talking about the vehicle, you know, that is the dangerous instrument. He is armed. There's been a gross misunderstanding that Mr. Thevenin wasn't armed. He had a 2000 pound vehicle weapon that he was weaponizing for the purposes of this event. So when we sit there and say, you know, and I'm shooting it on our man. And yes, I agree. If he was standing to the side, that's different. He's right in front. There's nowhere for this vehicle to go, which was the point I was trying to get to when we started. Does it matter that Sergeant French got out of the vehicle and immediately put himself in that position and then started firing? Now, assuming assuming that that, in fact, occurred the way that the plaintiff has it in their facts, when he exits the vehicle and puts himself between the two vehicles, there's nowhere else to go. There's a barrier that the vehicle is up against to his right. The car is behind him. Thevenin's car is in front of him. He has a limited square space to stand in, which is about four feet. Thirty nine inches, I think, is actually what's in the record. We can call it four feet for the purposes of discussion. I think it's tomato tomato. Here's the problem. When he puts himself in that position and he perceives that threat, that vehicle, that weapon, he's enabled to take the action that he took. And there's no there is no case law that says otherwise. There's nothing to tell him he can't do that. In fact, there's all these distinguishing cases that discuss all these other aspects. You know, high speed chase or shooting in through the side of the window or the Oberg case in the parking lot in Vermont. So assuming assuming the stress on assuming the jury could not discredit, as Judge Lynch pointed out, what happened earlier, we'd be saying because Judge Lynch made this point earlier, but because he posed some significant threat to his life during an earlier encounter, when the car crashes into the barrier, the police officer can step out of his car and immediately fire eight to 12 shots and kill him. That's what we'd be saying. An officer has qualified immunity to fire eight to 12 shots immediately upon getting out of the car because of an event that happened. How much time separated that event? Minutes. OK, that's what we'd be saying. We'd be telling officers they have qualified immunity. We're talking we're telling officers that they have the ability. This court would say to officers, you have the ability to make a mistake in judgment. You also have the ability to to use the information that you've gathered during the course of the event. So over the few few minutes that we had, we had all of the occasions and occurrences that happened. And we have this officer who gets out of his car. He fires eight shots. You know, Mr. Gross, you know, depending on which version was eventually want to use. But the ones that are most favorable to the plaintiff, he has him not say anything and he fires. And Randy French, at the time that he took that action, decided to use deadly force. It was in response to what he perceived to be the use of deadly force or the the about to be used deadly force of the vehicle. And the case law is clear that you do not need the the you don't need the the event to materialize before you engage deadly force. All right. All right. Thank you, Mr. Asplen. Mr. Parfenis. Yes. Good morning, Your Honor. I'd like to start off a little bit by based on how the the appellant has framed this appeal before this court. They have framed this appeal before this court as a question of the second prong. Now, Saucer says that we can consider them in any fashion as to whether or not the right being addressed in this case was clearly established. By the case law. And if you when you read the briefs, particularly their opening brief, and if you compare it to to the district court's decision on summary judgment, you see that that argument isn't what they made before the district court. And it wasn't in their opening brief that it was made to you. They argued that the law wasn't clearly established that a police officer could not shoot a vehicle that wasn't moving at it. Of course, it was stationary under the well-established law dealing with police chases. Because if you look at the brief and the effect, effectively, what the appellant was arguing is that the first prong was was the heart of the issue. And that coincides with what Magistrate Judge Stewart did in the district court. Addressing the objective reasonableness standard, their reply brief, I think recognizing that making that initial argument posed jurisdictional problems for this court kind of switched to switch directions. And it was raised in a reply brief before the district court, whether the law was clearly established. But it was really a throwaway argument. It was a couple paragraphs. Can I just say I think let's just focus on I think what I think it may be an important issue. It's sure. If assuming the jury has to credit. I don't mind if the jury has to credit what happened earlier based upon Sergeant French's testimony. The argument would be that when he pulled it, you know, when the when the car crashed into the barrier, he pulled his car up and he got out of his car. He was immediately in danger that because of the way his car was situated, that he had no choice but to maneuver his car in the way that he did and to step out his vehicle. And he was instantly in danger because of his proximity to your client's car. Can you address that? Yeah, sure. I think that that argument is an incredibly slippery slope because I think as Judge Lynch said, and as you did, Judge Bianco, that that means that any time that there is a prior encounter between a police officer and a and an individual who was fleeing, regardless of the circumstances in which they're fleeing. It wouldn't be any encounter. He's essentially arguing something unique about this, that because of the, I guess, the dynamics of the bridge, that in order to make sure that Mr. Devon and didn't escape and had to put his car in a certain angle and that when he got out of his car, he was immediately placing himself in danger by virtue of that. Very narrow situation. That would be every situation. I agree. And I misspoke in that sense. So but when I say that any situation in which a officer has a confrontation with a police officer and in this particular case, according to Mr. French, and there's no other witness to says that this happened, he tried to reach in the car, take the keys out. And then Mr. Devin and tried to move the move the vehicle when there's an intervening period of time in which that motor vehicle then is stopped at that point in time at that juncture that the officer now has an unbridled use of deadly force to stop the. Well, let me let me give you a hypothetical, which I think better is closer to what we're talking about than some of the ones that have been discussed, supposing that the officer, supposing that the officer, according to his testimony, which is uncontradicted. And as here, the officers since died, so he doesn't testify in the case, but he gave it a deposition, supposing that he his testimony is that he came to the apprehended, the plaintiff, the Thevenin in this case, and told him, you're under I'm a police officer. You're under arrest, whereupon the Thevenin pulled out a gun, began to run and turning over his shoulder, fired a number of shots at the officer in effort to escape. And they had a chase on foot and they chased each other for a distance. And finally, the fleeing person turned into an alley that turned out to be a blind alley. And the officer turned the corner and found himself face to face with the person who had been firing at him. But at the moment, he wasn't firing. At that moment, he wasn't firing. That is a closer representation. It's not a matter of whether just because there was something that happened in the past that put the officer's life at risk. It was that a few moments before the chase, the person was shooting at him. And he's not actually shooting at him at the moment when the officer shoots him, but he has the gun in his hand. And if a quarter of a second passes, the officer may well be dead. Now, I think that is closer to the facts of this case than the ones that you were talking about when you say just because something happened in the past between them. Well, I don't agree with that respectfully, Judge LaValle, but that is an accurate hypothesis. It certainly is not on exactly all fours, but it's a lot closer than what you were talking about. Under any circumstance, because what you're talking about is an individual who actually, in this case, in your hypothetical event, who took aim at somebody and started to fire at them with a gun. In this case, what you have is an individual trying to flee. Well, that was why he fired at him. His only purpose, he didn't have a malicious intent to kill the defendant. He just, more important than anything else, was getting away. And he was prepared to shoot at the officer if that would enable him to get away just the way this person was prepared to gun his car with the officer's body half in it if that's what he needed to do to escape from being arrested. Well, first off, we have the testimony of Mr. French, who is the only one who says that that's the incident necessarily happened. As Judge Wynn said, we can completely disagree on that. As in my hypothetical. Hypothetically, depending upon what the end of it was, that officer saw with it, if the individual had that gun standing at his side and the officer said, drop your weapon, drop your weapon, drop your weapon, and he didn't drop his weapon, he might be under those circumstances. He probably would be able to use deadly force. How long is it case? How long does it take to shoot somebody at a distance of six feet? Can you do it? Can you do it quicker? A matter of seconds. Oh, a matter of how many seconds? Fifteen seconds does it take to shoot somebody? I can only tell you from watching cowboy movies in my childhood how fast they're capable of drawing a weapon, so I don't necessarily know. Approximately the same time. A little quicker, but not all that much quicker than it takes to put one's foot on the gas and have the car advance four feet. There's a series of problems with the car positioning issue here. None of the witnesses, other than Mr. French, say he was standing directly in front of the car. Everybody else, even the Captain Montanino said that Mr. French was standing on the side of the vehicle, which is much more akin to the positioning that Captain McAllen said. Are there any photographs or diagrams of how the vehicles were situated in the record, or there's no photographs of that? I do not believe there are photographs in the record as to the positioning, but there is evidence in the record, and I don't know it off the top of my head now, that talks about Mr. Sergeant French being not directly in front of Mr. Evans' car, that he was more to the side. Is there any forensic evidence with respect to bullet holes in the windshield or things like that? I suppose it was not disputed that the Sergeant French shot Mr. Evans from the front of the vehicle. Correct. There are bullet holes that show the entries and that discuss the angle, and that discuss the angle. There is forensic evidence that discusses the angles in which the bullet holes were shot. And what does that forensic evidence say about whether Mr. French was by the side of the car or in front of the car? It shows that he was in an angle. To go back to the prior episode, Mr. Esplin says that you've essentially conceded that we have to assume that it's undisputed that the earlier incident occurred in the way that Sergeant French testified to it. We don't believe that. That is not correct. And the other problem that we have is that the body of case law that comes out of this court that talks about accepting… I'm trying to focus on the facts here for the moment. So the answer is no. There's no concession as to the accuracy of Mr. French's version. What is your position now? Do you think that taking the evidence in the light most favorable to the plaintiff, the testimony about the episode, at least insofar as it relates to the gun to the car while Sergeant French was half in it, is that a fact that we take into account or is that not a fact that we take into account? I don't believe that it should be considered because I think you have to look at the incidences. This wasn't a short little distance from which they drove. The driving occurred substantially long enough for multiple other officers to arrive at the scene. No one says that Mr. Thevenin was driving his car at a high rate of speed. Captain Montanino indicated that he believed that Mr. Thevenin was driving his vehicle at speeds either at the speed limit or below the speed limit. In terms of the medical evidence in the case, is there any medical evidence of an upper body injury to Sergeant French? There is substantial evidence to Sergeant French. No. No. So you'd be able to make an argument that his whole torso is in the car and the car rushes off, putting him at risk of his life. But not only is he not seriously injured and he's able to get in his car and pursue, but there is no evidence of any bruising to his upper body or anything of the sort. There is none. And to make Sergeant French's versions of all of the events less credible, this claim that he has some form of tibia injury, he went to the hospital after the incident. He had a quarter size bruise. There was no evidence in the record that he suffered from any other injury. He then subsequently claims without any proof of medical records that he suffered a tibial injury, that an MRI showed that he suffered that injury. But the MRI records were never produced. So there's virtually no evidence other than the self-serving testimony of Sergeant French that he suffered any injuries whatsoever as a result of this. And it's crucial to realize that none of the evidence, none of the witnesses, regardless of whose versions you credit, other than Mr. French's, say he was pinned. None of them say he was pinned. Every witness says that at the time that the shooting occurred, there was a distance between himself and the vehicle. Captain Montanino's version had the car backing up when the shots started to be fired. Captain Montanino's the one who puts him on the side, puts him to the side of the vehicle, not directly in front. One of the eyewitnesses, Mr. Millington, who has his own credibility problems, provides testimony that's very similar to Captain Montanino's testimony, although there's some slight differences. And we already explored what Mr. Gross has said as to what he necessarily observed. If the car is backing up, it doesn't seem to me that that is the light most favorable to the plaintiff. If someone's got his car in a confined space and he's going to try to go forward, backing up is the first step in what you do in order to get out of the space. So that's very helpful. Correct. Well, it's certainly not the best version of the facts for us, for sure. There is a version of it with depending upon where Mr. Montanino, where Mr. French was placed, that may have required Mr. French to retreat to avoid necessarily an injury. But we don't need to go there at this juncture because in the light most favorable to us, the car was not moving. It was stopped when Sergeant French... And in the light most favorable to you, he was off to the side when he fired the shots. Correct. What you said, let me just pause on that one. You said a moment ago in answer to one of the questions that the evidence showed that the entry of the bullet was at an angle. Would you elaborate on that? How much of an angle? OK, so the bullet entries, there were multiple bullet entries that struck him. He was struck, I believe, if I recall, five times in multiple parts of his body. He wasn't just struck in his upper torso. He was also struck in his arms. There are a handful of the forensic show that the bullets came in not from directly in front of him. They also came in from an angle. So I don't have the degrees in front of me. I'm not sure if you're talking about bullet wounds in various parts of his body. Those parts of his body, if they were arms, for example, he might well have been in motion as he was hit by bullets. So I'm not sure how the angle at which the bullet entered his body really proves anything very much unless you know exactly how his body was faced at the split second when a particular bullet hit him. Some of the bullet wounds create an entry that would be contradictory to Mr. French's version. Are there expert witness testimony regarding these various forensic issues? It's my understanding there were multiple investigations of this incident. A local grand jury, the attorney general of New York, the other people, and that there was some forensic evidence that was used by those folks. What is there in this record? Where would we look to see any expert reports about things like where there were bullet holes in windshields or other windows or whether anything can be gleaned from that? As I sit here today, I do not believe that the expert reports were placed into the record. I have to go back and look again, and I can point that out to you in a letter to the court after we close today. There were multiple investigations with regard to the bullet entries into the vehicle. They were locally done by the Detroit Police Department. I think they used somebody with the state. The attorney general's office sent the vehicle down to Quantico to have the FBI conduct a report on where the bullet entries necessarily went. And they do not show straight on shots. All right. Thank you, Mr. Mr. Asplen, do you have two minutes in rebuttal? Thank you, Judge. Just to address the angle of the bullet holes, I would have to concede. I agree with Mr. Harfen is that the bullet holes through the windshield and all of them go through the windshield are not necessarily from dead on. There were a number of them that came from Officer French's left. So as the vehicle turned to the right, he was pulled down into the left. So there is an angle of trajectory of the bullets through the windshield, which would indicate the officer laying to his left and shooting back to his right. So those photographs, I believe, are in the record. The expert reports that the courts inquired about, they're not in the record because we have we we stayed expert discovery pending the resolution of this issue for a lot of very practical reasons in all likelihood. But the vehicles have been have been investigated. The vehicles themselves, each of them investigated multiple times. Plaintiff's experts taking a look. My experts taking a look. The AG's experts taking a look. Troy PD is taking a look. Just to ask one, if, in fact, Sergeant French was off to the side, how how could this argument that you're making about when he got out of the car, he was immediately in danger. How would how would that play out if you're if you're ready to point out your honor? The point of him being off to the side is a description of where he is relative to the front of the vehicle. So he's not standing in the middle of the bumper with with either side of the hood to his left and right. He's standing to the front in on the front driver's side of the vehicle. So the front driver's side of the vehicle impacts Sergeant French. These are my facts, not the plaintiff's facts, but ultimately they impact him and catch him against the driver's door of the Detroit PD vehicle. So here's your facts, your facts. I'm trying to put these together. Right. Montanino's testimony or Mr. Gross's testimony. What the most favorable version would be, the most favorable version would be that he was stopped and that he was off to the side. Right. Captain Montanino doesn't say that he was not in between the vehicles. He says he was to the front on the towards the side of the vehicle. There's a barrier there, a Jersey barrier that stopped the bridge. There's nowhere to go. The front of French's car is against the Jersey barrier. The Thevenin vehicle is is in front of French and French is between it and the car to French's right is a Jersey barrier. That's the bridge. So there's no there's nowhere for him to be. He's in. It sounds like a lot of fact finding to me. We're going to make these. We're going to decide qualifying based upon position of the cars where there's no diagrams. There's no photos. Absolutely not. What you're going to what you're going to use is the law that we've all discussed. But more importantly, in the plaintiffs. So the facts that I was reciting to their found in the factual background recitation of the plaintiff's brief, pages six and seven, all referring to the joint appendix in there. And Mr. Hartman has mentioned that Mr. Millington, one of the eyewitnesses to the event, you know, he said he didn't say what he said. Millington in their facts. It states milking that observed the Honda move forward, quote, like he was trying to get out from in between the cars. And finally, Millington believed that the shooting started as French was being struck by the Honda and quote, that's their version of facts that they put. You know, that's their version of Millington's testimony, which the jury does not have to credit. They're not saying that that happened that way. They're denying that that happened that way. I don't think that they're denying it. I think they're using it for the purpose of trying to establish what was going on to create a question of fact. Those are their right. That's what creates a question of fact is that Millington says that. And French says that the car was moving towards French and that he was, in fact, pinned against the bars, French's version. Right. But Gross says that's not so. That's what makes a disputed issue of fact about what was going on. And regardless, given the facts that we discussed with Judge LaValle and Judge Bianco earlier and yourself, Your Honor, those facts, you have to take them into the totality of the circumstances that the officer understood. So all of those things that occurred up until that moment where he's confined in that 36 inch space between the front of the two vehicles. Yes, those are all facts that we need to consider. And those are all proximal aspects of this case. And in using Judge LaValle's hypothetical, the car is the gun. There's no question about it. The car is the gun. And this this pursuit did not take so long as Mr. A couple of minutes. That's the record. All right. Thank you, Mr. Asplund. Reserved decision. Thank you to both of you.